## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ABDULLAH AL-KIDD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV-06-1133-R |
| | ) | |
| JOHN SUGRUE, | ) | |
| | ) | |
| Defendant. | ) | |

## O R D E R

Defendant John Sugrue has moved for summary judgment on Plaintiff's Amended Complaint assertedly based upon qualified immunity and Plaintiff's lack of standing to pursue declaratory relief [Doc. No. 44]. Defendant Sugrue, who is sued in his individual capacity in this *Bivens* action, asserts that Plaintiff cannot establish a Fourth Amendment violation; that the law does not clearly establish that the Federal Transfer Center's visual search policy violated the Fourth Amendment; and that Defendant is entitled to qualified immunity because he did not personally participate in the search of Plaintiff, the manner and circumstances of which are alleged to have violated the Fourth Amendment.

The following facts are undisputed. On March 16, 2003, Plaintiff Abdullah Al-Kidd was arrested in Virginia on a material witness arrest warrant issued on application made by the United States Attorney's Office for the District of Idaho. At the detention hearing before a magistrate judge in the Eastern District of Virginia, Plaintiff agreed to a continuance to be transferred to Idaho for the detention hearing after being assured that the transfer would occur quickly. Plaintiff remained in a detention facility in Virginia until March 24, 2003,

when he was transported by airplane to the Federal Transfer Center (FTC) in Oklahoma City, Oklahoma.  During the entire duration of the trip, Plaintiff was shackled at the hands, waist and ankles.  Upon Plaintiff's arrival at the FTC, Plaintiff was taken to a "shower cell," where he was asked to remove all of his clothes.  Pursuant to what is apparently an unwritten policy of the FTC, a visual strip search and visual body cavity search of the Plaintiff was conducted by an FTC staff person standing outside the "shower cell" door.  After the search was completed, the staff person confiscated Plaintiff's clothes and left Plaintiff naked in the shower cell for approximately one and one-half to two hours until other arriving detainees had been processed through the Receiving and Discharge area of the FTC.  Plaintiff attests that because there was no bench or chair in the shower cell, he had to sit naked on the floor. He further attests that the cell was extremely cold to the point where he was shivering. Plaintiff attests that because the cell was so close to the desk where a female FTC staff person sat, with her back to the Plaintiff, processing detainees, each detainee who was being processed by the female employee could see the Plaintiff.  Plaintiff further attests that because he was cold and embarrassed, he curled up on the floor at the back of the shower cell, with his knees pulled up against his chest but that he was still in plain view of other detainees.  Eventually, an FTC staff person gave Plaintiff a prison uniform to put on, shackled the Plaintiff and took him to a single-occupant cell in FTC's Special Housing Unit for administrative detention.  Once Plaintiff was inside his cell with the door locked, his handcuffs and shackles were removed through a slot in the door.  Plaintiff attests that the cell was completely closed off from neighboring cells by concrete walls, making it impossible

2

for anything to be passed to him from other cells.  He further attests that he was never permitted to leave his cell.  The following morning, before being taken to the plane for transport to Idaho, Plaintiff was again handcuffed and shackled, taken from his cell and escorted to a barred cell where he was again subjected to another strip search and visual body cavity search.  Plaintiff attests that at least two other detainees could see him being searched.

It is FTC's policy to conduct a visual inspection of all body surfaces and body cavities of each inmate that arrives at FTC, regardless of whether the inmate is a sentenced prisoner, is awaiting trial, a material witness, or is being detained for some other purpose.  The BOP Inmate Systems Supervisor at the FTC attests that uniform application of the visual search policy ensures that it is not administered in a discriminatory manner.  The purpose of this policy is to prevent and deter the introduction of contraband and weapons into the FTC.  All FTC inmates are also subjected to a visual search upon departure from the FTC.  The stated purpose of these searches is to prevent contraband or weapons from leaving the facility and to deter the creation or obtaining of contraband and weapons within the FTC.

The FTC's Inmate Systems Supervisor, Johnny Rose, attests that the procedures for conducting visual searches are designed to ensure maximum privacy for the inmates.  Inmates are searched in one of eleven four-foot by four-foot search booths which have a curtain on the fourth side, allowing the FTC staff person to open the curtain and view the inmate, or in one of two four-foot by five-foot shower cells, having a barred, locked door on the fourth side.  Mr. Rose attests that because of the configuration and size of the booths and shower cells, it is difficult if not impossible for other inmates and staff to see into them while

3

a search is being conducted, and that while an inmate is being searched in a shower cell, other inmates are not moved past the shower cell doors.  Mr. Rose attests that it is FTC policy to have an inmate disrobe only long enough to perform a visual search and that inmates are given institutional clothing as soon as possible after visual searches are performed.  However, he states that there are occasions when staff will leave an inmate who's been searched in a shower cell, which is locked, for a short period while the staff person attends to other duties.

It is also FTC policy or practice for each inmate to be placed in a "boss chair" and then passed through a metal detector after the inmate is visually searched for the purpose of detecting metal objects that could not be detected by the visual search.

A significant number of inmates arrive at FTC on a daily basis and include sentenced prisoners, pretrial detainees, other types of detainees and material witnesses of all custody classifications and security levels.  Inmates housed at FTC come from both state and federal facilities and prisons all over the country.  On the day Plaintiff arrived at FTC, 187 inmates of all categories were admitted to FTC.  According to the sworn Declaration of Johnny Rose:

> The FTC has limited information about an inmate upon his or her arrival.  The movement paperwork that arrives with the inmate will provide the basis for an inmate's detention, but it may say nothing about the underlying conviction, charges, or specific reasons why an inmate is being detained.  The movement paperwork also may or may not indicate where an inmate was housed prior to arriving at the FTC.  If an inmate was housed in a non-Federal facility, the movement paperwork may not indicate security concerns that arose during the inmate's stay in the non-Federal facility.  The limited information that the FTC has about an inmate upon arrival necessitates a visual cavity search of all inmates to prevent the introduction of contraband or weapons into the facility.

Declaration of Johnny Rose (Exhibit "3" to
Defendant's Brief) at ¶ 6 (emphasis
added).

Defendant John Sugrue was warden of the FTC at the time Plaintiff was detained there
in March of 2003.   As Warden, Defendant Sugrue had oversight of all staff and was
responsible for the overall operations of the FTC, although he was not directly involved in
the daily operations of each department.   Defendant Sugrue had no knowledge of and no
personal interaction with the Plaintiff during the time Plaintiff was at the FTC.   Rick Sharp,
an Inmate Systems Supervisor at FTC, had no recollection of Plaintiff and none of FTC's
staff persons recalled Plaintiff coming into the FTC or going out.   Mr. Sharp also testified
that a Form 129 for Plaintiff, showing that Plaintiff was a federal material witness, *could
have been* included in the "movement papers" with which Plaintiff arrived at the FTC.

Despite the routine visual searches and use of the "boss chair"/metal detector upon
inmates' arrival at FTC and departure therefrom, inmates still attempt to smuggle contraband
and weapons in and out of the FTC.   Since December of 1999, there have been eight (8)
documented incidents of inmates attempting to do so, in each of which instance the material
was discovered during the visual search or when the inmate sat in the boss chair.   There have
been at least three instances since 2000 where weapons or contraband have been discovered
on inmates while in the FTC.   There is no information in the record as to the type(s) of FTC
inmates on which contraband or weapons were discovered during visual searches, use of the
boss chair or otherwise, i.e., whether the inmates were convicted prisoners, pretrial detainees,
material witnesses or other types of detainees.

Qualified Immunity

Qualified immunity is a defense to a *Bivens* action. *See Robbins v. Wilkie*, ___ U.S. __, 127 S.Ct. 2588, ___ L.Ed.2d __ (2007); *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Under the qualified immunity doctrine, government officials performing discretionary functions generally are immune from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Douglas v. Dobbs*, 419 F.3d 1097, 1100 (10th Cir. 2005), *cert. denied*, 546 U.S. 1138, 126 S.Ct. 1147, 163 L.Ed.2d 1001 (2006). "When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must first establish that the defendant violated a constitutional right." *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) (citing *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004)). If no constitutional violation is established no further inquiry is necessary. *See id., citing Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If a constitutional violation has been shown, the plaintiff must show that the constitutional right which was violated was clearly established. *See Saucier v. Katz*, 533 U.S. at 201, 121 S.Ct. at ____, 150 L.Ed.2d at 281. The inquiry as to whether a constitutional right was clearly established must be undertaken not in a broad general sense but in a more particularized and relevant sense. "The contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 201-02, 121 S.Ct. at __, 150 L.Ed.2d at 281-82, *quoting Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523, 531 (1987). Ultimately, however, the inquiry is whether the law

6

was sufficiently clear to given an official "fair warning" that his conduct deprived his victim of a constitutional right. *United States v. Lanier*, 520 U.S. 259, 270-71, 117 S.Ct. 1219, 137 L.Ed.2d 432, 445 (1997). This does not mean, however, that a plaintiff must point to a case involving identical or even very similar facts, although doing so would provide strong support for the conclusion that the law is clearly established. *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666, 679 (2002). General statements of the law may give fair and clear warning because they "apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'" *Lanier*, 520 U.S. at 270-71, 117 S.Ct. 1219, 137 L.Ed.2d at 446, *quoting Anderson v. Creighton*, 483 U.S. at 640, 107 S.Ct. 3034, 97 L.Ed.2d at 531. Thus, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, __, 153 L.Ed.2d 666, 679 (2002). "The more obviously egregious the [subject] conduct is in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Meyer v. Board of County Commissioners of Harper County, OK*, 482 F.3d 1232, 1242 (10th Cir. 2007) (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)).

<u>Did Defendant Violate Plaintiff's Fourth Amendment Rights By Causing
Plaintiff to be Subjected to the Strip Searches and Visual Body Cavity Searches?</u>

In determining whether a strip search is constitutional under the Fourth Amendment to the United States Constitution, the Court must balance the need for the particular search against the grave invasion of privacy it entails. *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct.

1861, 60 L.Ed.2d 447 (1979); *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000);

*Cottrell v. Kaysville City, Utah*, 994 F.3d 730, 734 (10th Cir. 1993); *Chapman v. Nichols*, 989

F.2d 393, 395-96 (10th Cir. 1993); *Hill v. Bogans*, 735 F.3d 391, 393-95 (10th Cir. 1984);

*Draper v. Walsh*, 790 F.Supp. 1553, 1558 (W.D. Okla. 1991); *Morreale v. City of Cripple*

*Creek*, 113 F.3d 1246, 1997 WL 290976 (10th Cir. May 27, 1997) (No. 96-1220) at *7; *Ellis*

*v. Sharp*, 30 F.3d 141, 1994 WL 408129 at *3 (10th Cir. Aug. 4, 1994) (No. 93-6242).   In

arriving at that balance, the Court must consider the scope of the intrusion, the manner in

which it was conducted, the justification for initiating the search and the place where the

search took place.   *Id*.   Personal body searches of inmates must be reasonable under the

circumstances.   *Levoy v. Miller*, 788 F.2d 1437, 1439 n ** (10th Cir. 1986).   *See Ohio v.*

*Robinett*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347, 354 (1996) (Reasonableness

under the Fourth Amendment is "measured in objective terms by examining the totality of

the circumstances.").

In this case, no probable cause or reasonable suspicion that Plaintiff was concealing

weapons or contraband on his person was articulated as the justification or need for the strip

and body cavity searches at issue.   Rather, the searches were conducted pursuant to an FTC

policy to conduct such searches on all arriving and departing FTC inmates.   The stated

purpose for this policy as applied to arriving inmates is to prevent and deter the introduction

of contraband and weapons into the FTC and as applied to departing inmates is to deter the

creation or obtaining of contraband and weapons within the FTC.   Thus, the articulated need

for the searches in this case is the maintenance of institutional security at the FTC by

preventing and deterring the introduction, creation or obtaining of contraband or weapons in the FTC.  Maintaining a safe and secure detention facility is a legitimate penological interest.  *See Bell v. Wolfish*, 441 U.S. at 540 & 546, 99 S.Ct. 1861, 60 L.Ed.2d at 469 & 473; *Block v. Rutherford*, 468 U.S. 576, 586, 104 S.Ct. 3227, 82 L.Ed.2d 438, ____ (1984). However, Plaintiff had neither been arrested for or convicted of any crime.  Plaintiff was merely a material witness who had voluntarily agreed to be transferred to the District of Idaho for a detention hearing.  Plaintiff was either a material witness detainee or a material witness subject to possible detention following a detention hearing in Idaho.

"A strip search is an invasion of personal rights of the first magnitude."  *Nelson v. McMullen*, 207 F.3d at 1206, *quoting Chapman v. Nichols*, 989 F.2d at 395.  Strip searches involving the visual inspection of body cavities, like those herein, are even more intrusive and among the most dehumanizing and degrading of experiences.  *See Levoy v. Mills*, 768 F.2d at 1439.  In this case Plaintiff was twice required to remove all of his clothes and subjected to a visual inspection of his body cavities.  Thus, the scope of the intrusion upon Plaintiff's privacy interests was great.

There is no dispute at to where the searches of Plaintiff were conducted.  Although Defendant's Inmate Systems Supervisor, Johnny Rose, attests that "[t]he procedures for conducting visual searches are designed to ensure maximum privacy for the inmates," Declaration of Johnny Rose at ¶ 9; that it is difficult if not impossible for other inmates and staff to see inside the cell while a search is being conducted," *id.* at ¶ 11; and that while an inmate is searched in a shower cell, other inmates are not moved past the shower stall doors,

*see id*. at ¶ 12, his description of the shower cells indicates that it was certainly possible for other inmates or staff to see into the shower cell while the search of Plaintiff was being conducted and to see Plaintiff when he was left nude in the shower cell.  Moreover, because Mr. Rose's statements pertain only to routine procedures and not to what occurred while and after Plaintiff was strip searched, they do not directly or completely controvert Plaintiff's statements that inmates being processed and a female staff person could see Plaintiff when he was left naked in the shower cell following the initial strip search or that at least two inmates could see him when he was strip searched before his departure from the FTC. Likewise, Mr. Rose's statements that FTC policy is to have an inmate disrobe only long enough for a visual search and that inmates are given institutional clothing as soon as possible after the visual searches, *see id*. at ¶ 14, do not directly or completely controvert Plaintiff's statement that he was left naked in the shower cell for one and one-half to two hours following the visual search conducted when he arrived at FTC because, again, Mr. Rose's statements pertain to what generally or ordinarily occurs and not to what specifically occurred after Plaintiff was strip searched.  It is unnecessary, however, for the Court to resolve any factual disputes in the record concerning the place where the initial search of Plaintiff was conducted and the manner in which it was conducted.  Likewise, it is unnecessary for the Court to resolve any factual discrepancy in the record as to the place or manner in which the search of Plaintiff before his departure from FTC was conducted. Neither of the searches of Plaintiff was performed in a place and manner that ensured his privacy and prevented others from viewing Plaintiff while and after he was being searched.

If the Court balances the need to search Plaintiff, a material witness who had never been arrested for or convicted of committing a crime, for weapons or contraband to prevent or deter the introduction, creation or obtaining of same in the FTC against the grave invasion of the Plaintiff's privacy occasioned by the strip searches of Plaintiff and visual inspections of his body cavities, considering the factors set forth in *Bell v. Wolfish*, both of the searches of Plaintiff were objectively unreasonable and violated the Fourth Amendment.

However, the searches of Plaintiff herein were conducted pursuant to an FTC policy requiring searches of all incoming and departing inmates or detainees.  A search conducted pursuant to such a prison policy which impinges on inmates' constitutional rights is valid if it is reasonably related to legitimate penological interests.  *See Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64, 70 (1987); *Farmer v. Perrill*, 288 F.3d 1254, 1260 (10th Cir. 2002).  Maintenance of facility security by preventing and deterring the introduction, creation or obtaining of weapons and contraband is a legitimate penological interest.  However, the searches of Plaintiff and the manner in which they were conducted were not reasonably related to the FTC's security needs.  There is no logical or legitimate reason to think that individuals like Plaintiff, who are detained merely because they are material witnesses and who have not been charged with or convicted of a crime, may be concealing weapons or contraband.  Strip searches and body cavity inspections of material witness detainees are irrational and arbitrary or an "exaggerated response" to security needs and the likelihood of the articulated concern that inmates subject to searches would learn which detainees would not be searched and ask or force them to smuggle contraband or weapons

11

into the FTC, *see* Declaration of Johnny Rose at ¶ 19.  This is particularly true inasmuch as it is also FTC policy to conduct pat searches of all inmates and subject them to the "boss chair"/metal detector procedure.  With respect to the strip search of Plaintiff upon his arrival, it is illogical or irrational to believe that another inmate could have asked or forced Plaintiff to conceal a weapon or contraband in transit to the FTC because Plaintiff was shackled.  The strip search of Plaintiff before his departure from the FTC, after Plaintiff had been strip searched upon arrival at FTC, shackled, placed in a single-person cell to which no other inmates had access and which Plaintiff was not allowed out of for the duration of his stay at FTC, bears no rational relationship to any security needs or interest of the FTC.  Moreover, accommodation of the constitutional rights of material witness detainees like Plaintiff by ascertaining their status as material witnesses would pose little burden on FTC staff. *Compare with Turner v. Safly*, 482 U.S. at 90, 107 S.Ct. 2254, 96 L.Ed.2d at 79-80.  It is not reasonable for FTC staff to conduct strip searches and visual body cavity inspections on material witness detainees merely because they don't know that they are merely material witness detainees and not convicted prisoners.  *See Ellis v. Sharp*, 30 F.3d 141, 1994 WL 408129 at *2 (10th Cir. Aug. 4, 1994).

Finally, "the existence of obvious, easy alternatives" to policy-dictated routine strip and body cavity searches of all material witness detainees "at de minimis cost to the valid penological interests," such as a stamp on material witnesses' moving papers identifying their status as such, coupled with a pat-down search or a pat-down search and use of the "boss chair"/metal detector procedure, is evidence that FTC's policy of strip searches and body

cavity inspections for all incoming and outgoing "inmates," as applied to material witness detainees, is not reasonable and not reasonably related to legitimate penological interests. *See id*., 482 U.S. at 90-91, 107 S.Ct. 2254, 96 L.Ed.2d at 80.  The record herein shows that Defendant's policy as applied to Plaintiff is not reasonably related to legitimate penological interests in facility security and that Defendant violated Plaintiff's Fourth Amendment rights by causing Plaintiff to be subjected to strip searches and body cavity inspections both upon his arrival at FTC and before his departure therefrom.  With respect to the place and manner in which the searches of Plaintiff were conducted, genuine issues of material fact exist as to whether the conditions of the searches violated Plaintiff's Fourth Amendment rights. However, Plaintiff's version of the material facts as to where the searches were conducted, whether Plaintiff could be viewed by other inmates during the searches and the length of time during which Plaintiff remained naked and visible to other inmates following the initial search supports a claim for the violation of Plaintiff's Fourth Amendment rights by the place and manner in which the searches were conducted.  *See Walker v. City of Orem*, 451 F.3d 1139, 1130 (10th Cir. 2006) (denial of summary judgment on the issue of qualified immunity is proper where the plaintiff's version of facts in summary judgment proceedings supports a claim for a violation of a constitutional right).

<u>Was the Law Clearly Established Such that Defendant Should Have Known that Subjecting Plaintiff to the Strip Searches and Body Cavity Inspections Violated Plaintiff's Constitutional Rights?</u>

As early as 1984, the Tenth Circuit held that strip searches of persons arrested for minor traffic offenses of whom officials had no reasonable suspicion that they were carrying

or concealing weapons or drugs, conducted pursuant to a blanket policy requiring all detainees to be strip searched, were unconstitutional as violative of such detainees' Fourth Amendment rights, even when such detainees were or were to be intermingled with the prison population. *See Hill v. Bogans*, 735 F.2d 391 (10th Cir. 1984). In 1993, the Tenth Circuit stated that "[e]very circuit court, including our own, which had considered the constitutionality of strip searches conducted under such circumstances has concluded that such searches are unconstitutional." *Chapman v. Nichols*, 989 F.2d 393, 395 (10th Cir. 1993) (citing cases from the Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth and Tenth Circuits). The Tenth Circuit has in fact consistently and continuously condemned strip searches with or without visual inspection of body cavities of pretrial detainees arrested for minor offenses as unreasonable as a matter of law and unconstitutional under the Fourth Amendment. *See Cottrell v. Kaysville City, Utah*, 994 F.2d at 734; *Chapman*, 989 F.2d at 395-96; *Hill v. Bogans*, 735 F.2d at 393-94; *Morreale v. City of Cripple Creek*, 1997 WL 290976 at \*6-7; *Ellis v. Sharp*, 1994 WL 408129 at \*2. *Cf. Foote v. Spiegel*, 118 F.3d 1416, 1425-26 (10th Cir. 1997) (no qualified immunity for strip search of person arrested for possession of drugs but not placed in general inmate population where there was no reasonable suspicion she had additional drugs or a weapon on her person). Moreover, the Tenth Circuit has consistently condemned strip searches with or without body cavity inspections even of convicted prisoners as unreasonable and violative of the Fourth Amendment when they are conducted in full view of other inmates and staff, at least without sufficient justification for conducting the searches in an open area. *See Farmer v. Perrill*,

288 F.3d at 1259-61; *Nelson v. McMullen*, 207 F.3d at 1207; *Hayes v. Marriott*, 70 F.3d 1144, 1146-48 (10th Cir. 1995).  Finally, the Tenth Circuit has specifically held that it was clearly established by May of 1993 that a strip search of a person arrested for a minor traffic offense, conducted in view of other persons, without sufficient justification for the search or for conducting it in a public area, violates the Fourth Amendment and that a reasonable officer would have known that by May of 1993.  *See Farmer v. Perrill*, 288 F.3d at 1260, *citing Hill v. Bogans*, 735 F.2d 391; *Foote v. Spiegel*, 118 F.3d at 1425 ("[I]t was clearly established in May 1994 that a strip search of a person arrested for driving under the influence of drugs but not placed in the general jail population is not justified in the absence of reasonable suspicion that the arrestee has drugs or weapons hidden on his or her person.") (citing *Cottrell*, 994 F.2d at 734).  In *Chapman v. Nichols*, the Tenth Circuit in 1993 concluded as a matter of law that a belief that "a strip search policy applied to minor offense detainees without particularized reasonable suspicion was lawful if conducted in private" was "not objectively reasonable" in light of clearly established law, rejecting a defense of qualified immunity.  989 F.2d at 398.  The Tenth Circuit further observed in *Chapman* that "no circuit case has upheld the grant of qualified immunity when asserted against  a claim based on an across-the-board policy of strip searching minor offense detainees."  *Chapman v. Nichols*, 989 F.2d at 398 (citing cases).  *Accord Draper v. Walsh*, 790 F.Supp. 1553, 1560-61 (W.D. Okla. 1991).

In the case before this Court, Plaintiff had not even been arrested for a minor offense; he was arrested and detained as a material witness.  He was not intermingled with convicted

prisoners at FTC and was handcuffed and shackled while in the presence of other inmates. If an official could not have reasonably believed in 1993 that a strip search policy applied to minor offense detainees was constitutional in light of clearly established law, *a fortiori*, Defendant could not have reasonably believed in 2003 that the strip search/body cavity inspection policy of FTC, applied to a material witness detainee such as the Plaintiff, did not violate the law and deprive Plaintiff of his Fourth Amendment rights. Likewise, if the searches in question occurred where Plaintiff could be and was viewed by other inmates, as Plaintiff attests but as to which a genuine issue of material fact exists, Defendant Sugrue could not have reasonably believed that the manner of conducting the searches was reasonable and did not violate Plaintiff's Fourth Amendment rights. However, an issue remains as to whether Defendant Sugrue caused the deprivation of Plaintiff's Fourth Amendment rights by the <u>place and manner</u> in which the strip searches were conducted, i.e., whether there is any basis for Defendant's personal liability for the place/manner in which Plaintiff maintains the strip searches were conducted.

<u>Did Defendant Personally Participate in the Asserted Constitutional Violations</u>

Defendant Sugrue does not argue that he cannot be liable for deprivations of Plaintiff's constitutional rights occasioned by conducting strip searches and body cavity inspections of Plaintiff at the FTC because he did not personally participate in them. Nor does he argue that he did not promulgate and/or enforce the FTC policy on strip searched and body cavity searches. The Court therefore presumes that Defendant Sugrue promulgated and enforced the FTC policy on strip searches and body cavity searches and therefore, that he is

16

liable for the violation of Plaintiff's Fourth Amendment rights occasioned by the searches by "causing" such violations.  *See Thomas v. Ashcroft*, 470 F.3d 491, 496-97 (2nd Cir. 2006) (personal involvement of a supervisory defendant necessary for liability in *Bivens* action may be shown by evidence that he created a custom or policy fostering the constitutional violation or allowed the custom or policy to continue after learning of it).  *Cf. Worrell v. Henry*, 219 F.3d 1197, 1214 (10th Cir. 2000) (supervisor is liable under 42 U.S.C. § 1983 where an affirmative link is shown between the constitutional deprivation and the supervisor's personal participation or exercise of control or direction).  However, he argues that he cannot be liable for any deprivation of Plaintiff's Fourth Amendment rights resulting from the place and manner in which he was searched, that is, because the searches were conducted where Plaintiff could be viewed by other inmates and because Plaintiff was left naked in the shower cell for one and one-half to two hours, if this was in fact the case.  This is so, Defendant Sugrue asserts, because the FTC search policy does not sanction any of these circumstances, and Defendant Sugrue cannot be liable for actions of the FTC staff that were contrary to policy procedures.  In other words, Defendant Sugrue asserts that Plaintiff has failed to show Defendant's personal participation in these aspects of the searches or any affirmative link between the deprivation of Plaintiff's constitutional rights occasioned by these search conditions and Defendant's personal participation or exercise of control or direction.  Defendant Sugrue is correct.  However, Plaintiff, concurrently with his response to Defendant's motion for summary judgment, filed a motion pursuant to Rule 56(f), F.R.Civ.P. [Doc. No. 49], most of which is moot in light of the foregoing.  But in his Rule 56(f) motion,

Plaintiff asserts that he should be permitted to conduct discovery directed to how often the practice of leaving detainees naked in their cells or shower cells during or after searches has occurred and for what length of time detainees have been so left, whether Defendant Sugrue was aware of, condoned or tolerated this "practice" and what measures, if any, Defendant took to prevent this practice from occurring at the FTC, including what training was conducted in that regard.  Plaintiff also requests that he be permitted to take the deposition of the individual responsible for Plaintiff's initial search and prolonged wait before he was furnished any clothes to understand whether Plaintiff was "singled out" for the treatment he received and to determine whether such treatment was at the direction of "someone in a supervisory position," presumably to include Defendant.   Defendant asserts that this discovery should not be permitted "because Plaintiff has not satisfied his burden under Rule 56(f) of showing that this discovery would rebut Defendant's assertion of qualified immunity."  Defendant's Opposition to Plaintiff's Rule 56(f) Motion at pp. 4-5.  As should be obvious from the foregoing, Defendant is wrong.  If the searches took place in the place/manner as Plaintiff attests and Plaintiff was left naked in the shower cell for one and one-half to two hours, Plaintiff's constitutional rights were violated thereby, constitutional rights which were clearly established at the time of those searches, and Defendant would not be entitled to qualified immunity if he personally participated in or caused the violations. Under extant case law,

> [P]ersonal involvement of a supervisory defendant may be shown by evidence that the defendant (1) directly participated in the constitutional violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3)

created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; (4) was grossly negligent in supervising subordinates who caused the violation; or (5) failed to act on information indicating that unconstitutional acts were occurring.

> *Thomas v. Ashcroft*, 470 F.3d 491, 496-97 (2nd Cir. 2006) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2nd Cir. 1994).

In this circuit, in the Section 1983 context, a supervisor may be liable for the unconstitutional acts of his subordinates if the plaintiff shows that an affirmative link exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, his acquiescence in the constitutional violation or his failure to supervise. *See Serna v. Colorado Department of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006); *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1187 (10th Cir. 2001); *Worrell v. Henry*, 219 F.3d 1197, 1214 (10th Cir. 2000); *Green v. Branson*, 108 F.3d 1296, 1304 (10th Cir. 1997); *Winters v. Board of County Commissioners*, 4 F.3d 848, 855 (10th Cir. 1993); *Meade v. Grubbs*, 841 F.3d 1512, 1527 (10th Cir. 1988). The supervisor's state of mind is critical to showing the affirmative link. *See Serna*, 455 F.3d at 1151. Mere negligence is insufficient to hold a supervisor liable under § 1983; rather, a plaintiff must show that the supervisor acted knowingly or with deliberate indifference that a constitutional violation would occur, *id.*, which requires that a plaintiff show that the supervisor was aware of facts from which the inference could be drawn that a substantial risk of the violation of constitutional rights existed and that the supervisor actually drew the inference. *See Serna*, 455 F.3d at 1154-55.

If, for example, Plaintiff can show that FTC inmates were with some frequency searched where they could be viewed by other inmates and/or were left naked in shower cells where they could be viewed by other inmates, that Defendant Sugrue was aware of this practice and condoned or acquiesced in it and that he had the requisite state of mind, then Defendant Sugrue may be liable for the claimed deprivation of Plaintiff's constitutional rights and not qualifiedly immune. Similarly, if Plaintiff can show that Defendant Sugrue directed this treatment of Plaintiff, Defendant may be liable and not enjoy qualified immunity for Plaintiff's *Bivens* claim based upon the place and manner of the strip searches. Accordingly, Plaintiff's Rule 56(f) motion is GRANTED insofar as Plaintiff asks the Court to hold Defendant's motion directed to the place and manner of the strip searches in abeyance and allow Plaintiff to conduct discovery as to whether the frequency with which detainees were strip searched where they could be viewed by others and left naked in their cell for more than a few minutes, whether Defendant Sugrue was aware of and tolerated or condoned any such practice, what measures, if any, he took to prevent such practices from occurring and as to whether anyone in a supervisory position directed the treatment Plaintiff received. Plaintiff is GRANTED a period of sixty (60) days in which to conduct such discovery. Plaintiff is directed to file his supplemental brief responding to Defendant's argument that he cannot be liable for any constitutional deprivation occasioned by the place and manner in which the strip searches of Plaintiff were conducted due to lack of personal participation within seventy-five (75) days of the date of this Order.

<u>Declaratory Relief</u>

20

Defendant asserts that Plaintiff is not entitled to declaratory relief on his Fourth Amendment *Bivens* claims for the same reason that the Court concluded he was not entitled to such relief on his Fifth Amendment claim: Plaintiff lacks standing to pursue this claim. Plaintiff does not take issue with this argument and the Court concludes that Plaintiff lacks standing to pursue declaratory relief on his Fourth Amendment claims. *See PeTA v. Rasmussen*, 298 F.3d 1198, 1202-03, 1203 n. 2 (10th Cir. 2002); *Bauchman v. West High School*, 132 F.3d 542, 548-49 (10th Cir. 1997); *Green v. Brown*, 108 F.3d at 1299-1300.

<u>Conclusion</u>

In accordance with the foregoing, Defendant's motion for summary judgment [Doc. No. 44] on Plaintiff's Fourth Amendment *Bivens* claims predicated on the strip searches and visual body cavity inspections of Plaintiff, based upon qualified immunity, is DENIED; Defendant's motion for summary judgment on Plaintiff's claims for declaratory relief is GRANTED; Plaintiff's Rule 56(f) motion [Doc. No. 49] is GRANTED in part as set forth herein and DENIED in part as moot; and Defendant's motion for summary judgment on Plaintiff's Fourth Amendment *Bivens* claims predicated on the place and manner (duration) of the strip searches, based upon lack of personal participation, is HELD IN ABEYANCE pending completion of discovery permitted Plaintiff herein and the filing of Plaintiff's supplemental brief as ordered herein. Defendant is GRANTED leave to file a reply brief to Plaintiff's supplemental brief within ten (10) days after the filing of Plaintiff's supplemental brief. Plaintiff is *sua sponte* GRANTED partial summary judgment on the issue of

Defendant's liability on Plaintiff's Fourth Amendment *Bivens* claim based upon the fact that he was twice subjected to a strip search and visual inspection of his body cavities.

**It is so ordered this 23rd day of August, 2007.**

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE